UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-61342-CIV-MARRA/MATTHEWMAN

GREG BILL,

      Plaintiff,

vs.

CITY OF NORTH
LAUDERDALE,
FRANK BURELLO, and
DAVID WYGLADALSKI,

      Defendants.
_____/

## <u>ORDER AND OPINION GRANTING MOTION TO DISMISS</u>

THIS CAUSE is before the Court upon Defendant, City of North Lauderdale's

Motion to Dismiss Plaintiff's Amended Complaint; Alternatively, Motion for More

Definite Statement and Motion to Strike [DE 11].  The Court has carefully considered

the motion, the response (filed three months late[1]), the reply, and is otherwise fully

advised in the premises.

Plaintiff, Gregory Bill ("Bill"), filed an Amended Complaint ("Compl.") against

his employer, the City of North Lauderdale ("City"), and two co-workers, Frank

---

[1] The Court granted Plaintiff an unopposed extension of time until September 17, 2012, to respond to this Motion to Dismiss.  Plaintiff never filed a response, or sought an extension of time to respond.  On October 10, 2012, the individual defendants moved for their Motion to Dismiss to be granted by default.  The Court issued an Order to Show Cause, which was eventually discharged.  Plaintiff finally responded on December 18, 2012.  The Court will not extend additional courtesies to Plaintiffs counsel if there are further failures to follow the local rules.

Burello ("Burello") and David Wygladalski ("Wygladalski").  Plaintiff has been

employed by the City for more than seven years in the Public Works Department in

the canals division.  Compl. ¶ 10.  The gist of the Complaint is summarized as follows:

"[o]ver the course of the past six (6) years, Plaintiff has been subject to derogatory

comments and 'writings' made to the rest of all City employees which make fun of his

national origin, his weight, his age, his sexual orientation."  Compl. ¶ 15.  In

Plaintiff's Amended Complaint, six counts are directed at the City.  The City moves to

dismiss all six counts arguing that none of them state a cause of action.

<u>Standard of Review</u>

For purposes of deciding a motion to dismiss, the Court accepts the allegations

of the complaint as true and views the facts in the light most favorable to it.  *See,*

*e.g., Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003); *Murphy v. Federal Deposit*

*Ins. Corp.*, 208 F.3d 959, 962 (11th Cir. 2000).  A plaintiff is required to allege "more

than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A

complaint may be dismissed if the facts as pled do not state a claim for relief that is

plausible on its face."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir.

2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)).  "[W]hile notice pleading

may not require that the pleader allege a 'specific fact' to cover every element or

allege 'with precision' each element of a claim, it is still necessary that a complaint

'contain either direct or inferential allegations respecting all the material elements

necessary to sustain recovery under some viable legal theory.'"  *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir. 1981)).

## Discussion

In Count I, Plaintiff attempts to state a claim against the City pursuant to Title VII, claiming that he has been subject to a hostile work environment because of his national origin[2] (*i.e.*, because he is Irish).[3]  To plead a hostile work environment claim under Title VII, Bill must allege (and support with plausible facts) that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) *the harassment was based on his membership in the protected group*; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability.  *Benjamin v. Holy Cross Hosp.*, 11-62142-CIV, 2012 WL 1900026 (S.D. Fla. May 24, 2012) citing *Edwards*

---

[2]  "The term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Manufacturing Co., Inc.*, 414 U.S. 86, 88 (1973).

[3]  In paragraph 15 of the Amended Complaint, Plaintiff alleges Defendant's employees made "fun of his national origin, his weight, his age, his sexual orientation."  Yet, the Title VII claim only refers to national origin and hostile work environment.  Additionally, there are no allegations which suggest Plaintiff was subject to discrimination based on his age or sexual orientation.  Moreover, sexual orientation is not protected by Title VII or the Florida Civil Rights Act.  *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257, 261 (3rd Cir. 2001); *Simonton v. Runyon,* 232 F.3d 33, 35 (2d Cir. 2000)(Title VII does not prohibit harassment or discrimination based on sexual orientation).

*v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010); *Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *see also Shields v. Fort James Corp.,* 305 F.3d 1280, 1282 & n.2 (11th Cir. 2002) (noting that Title VII and § 1981 hostile work environment claims have the same elements and are subject to the same analytical framework).

In support of his hostile work environment claim, Plaintiff alleges that he was excused from work in order to have a medical procedure.  Compl. ¶ 20.  Upon his return, Plaintiff asserts that a picture of a small pig was posted above the clock in the City employee lunchroom with the words, "baby found in the rectum of a fat Irish ass."  Compl. ¶ 21; Ex. at DE10-1.  That both subsequent to and prior to the "pig" incident, other derogatory pictures were also posted in the employee lunchroom including "pictures of overweight persons, animals representing women who the Plaintiff dated, and other patently offensive depictions."  Compl. ¶¶ 23-24.  "In addition a sticky note with the words, 'I'm a Fat Fuck' was pasted to Plaintiff's back," and "pictures depicting the Plaintiff as a person with a weight/eating problem was emailed to a 3rd party unrelated to the Plaintiff's employment."  Compl. ¶¶ 25-26.

To the extent Plaintiff claims that he was subjected to a hostile work environment because of his national origin, Plaintiff's Complaint only alleges *one* incident that could be construed as being based on his national origin.  Compl. ¶ 21. An employer's harassing actions toward an employee do not constitute employment

discrimination under Title VII unless the conduct is "sufficiently severe or pervasive

'to alter the conditions of [the victim's] employment[4] and create an abusive working

environment.'"  *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (quoting

*Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982).  The Supreme Court and

the Eleventh Circuit have identified the following four factors that should be

considered in determining whether harassment objectively altered an employee's

terms or conditions of employment: (1) the frequency of the conduct; (2) the severity

of the conduct; (3) whether the conduct is physically threatening or humiliating, or a

mere offensive utterance; and (4) whether the conduct unreasonably interferes with

the employee's job performance.  *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245-46

(11th Cir. 1999); *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997) (citing

*Harris*, 510 U.S. at 23).

    In this case, the vast majority of insults seem to relate to Plaintiff's girth or

weight.  Obese individuals are not a protected class under Title VII.  No where in Title

---

    [4] Establishing that harassing conduct was sufficiently severe or pervasive to
alter an employee's terms or conditions of employment includes a subjective and an
objective component.  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993).  The
employee must "subjectively perceive" the harassment as sufficiently severe and
pervasive to alter the terms or conditions of employment, and this subjective
perception must be objectively reasonable.  *Id.*  The environment must be one that
"a reasonable person would find hostile or abusive" and that "the victim ...
subjectively perceive[s] ... to be abusive."  *Id.* at 21.  Furthermore, "the objective
severity of harassment should be judged from the perspective of a reasonable person
in the plaintiff's position, considering 'all the circumstances.'"  *Id.* at 23.  The
objective component of this analysis is somewhat fact intensive.

VII is weight mentioned as a protected characteristic. *Armstrong v. City of Dallas,* 997 F.2d 62, 67 n. 19 (5th Cir. 1993); *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003) (because Title VII does not proscribe discrimination based upon an employee's excessive weight, the district court properly considered only Taylor's claim of race discrimination under Title VII).  Therefore to discriminate against an employee for being over weight is not actionable under Title VII.

Only one insult, in part, relates to Plaintiff's Irish descent.[5]  Because there is no cause of action for weight discrimination under Title VII, a determination of whether Plaintiff has stated a valid claim for hostile work environment must be limited to the one reference to Plaintiff's national origin (which also targets

_____

[5]  The following purported offending incidents are attached to the Complaint: a computer generated picture of what can best be described as an old alien pig face with the words, "BABY FOUND, IN RECTUM OF FAT IRISH ASS," DE 10-1 at 1; a picture of a "screaming" turtle with they words, "WHY DO I HAVE TO GO!  I DID NOTHING WRONG. I SHOULD HAVE STAYED IN WESTON," DE 10-1 at 2; a picture of an adult polar bear (labeled "Greg") and a baby polar bear (labeled "Mike") with the words, "PLEASE DON'T MAKE ME PICK UP ALL THOSE BRANCHES!," DE 10-1 at 3; a copy of an email from individual defendant Dave Wygladalski to "Greg's girlfriend" apologizing for having sent pictures, DE 10-1 at 4; a photograph of Plaintiff in a boat with the words, "Greg just ate a whole chicken," DE 10-1 at 5; another picture of Plaintiff in a boat with the words, "My body of a 25 year old," DE 10-1 at 6; another picture of Plaintiff bent over, working, with the words, "Greg in his glory," DE 10-1 at 7; five (2 ½" by 3") pictures on one page of animals dressed as women (a hippopotamus in a bikini, dogs with wigs and hats, and a pig with heart sunglasses and pearls) with the words, "Greg Panama Girls," DE 10-1 at 8; what appears to be a computer generated picture of a two headed dog with the mouth of one dog bearing its teeth viciously, with the words, "Please!  I did not tell anybody you were on the golf course reading a newspaper," DE 10-1 at 9; a photograph of a topless obese person with long hair with the words, "Don't worry I got 30 years experience," DE 10-1 at 10; and a 4" x 4" note with the words, "I'M A FAT FUCK," DE 10-1 at 10.

Plaintiff's weight because of the picture and the words).  This one offensive reference to Plaintiff's national origin is legally insufficient to state a cause of action.  *Marcelin v. Eckerd Corp. of Florida, Inc.*, 2006 WL 923745, *7 (M.D. Fla. Apr. 10, 2006) (three derogatory statements alleged to have been made by his supervisor fail to establish, as a matter of law, that the subject conduct was based on race or national origin); *see, also, Orenge v. Veneman,* 218 F. Supp. 2d 758, 767-68 (D. Md. 2002) (five allegedly racist remarks by supervisor, including comment on the O.J. Simpson trial that whites would never trust blacks again, statement that blacks are trying to get a free ride, and some "you people" type comments, were insufficient to cause a reasonable person to believe that the complained-of actions were motivated by racial animus); *Dunlap v. Kansas Dep't of Health & Env't*, 211 F. Supp 2d. 1334, 1340-42 (D. Kansas 2002) (allegations that supervisor used foreign accent to mock unintelligent questions and pretended several times not to understand employee's accent did not, even if true, establish that employee's ancestry was being targeted by complained-of actions, which included disciplinary actions, denial of employee's requests for vacation, requests to transfer employee, and removal of some of employee's duties).

Title VII is not a general civility code and "ordinary tribulations of the workplace" are insufficient as a matter of law to support a hostile work environment claim.  The one reference to Plaintiff's national origin falls within the description of an "ordinary tribulation[] of the workplace."  *Marcelin v. Eckerd Corp. of Florida,*

*Inc.*, 2006 WL 923745 (M.D. Fla. Apr. 10, 2006).  While the alleged actions taken against Plaintiff relative to his weight, if true, are needlessly cruel, offensive and should not be tolerated by an employer in a work environment, the law does not protect Plaintiff from this demeaning conduct.  Accordingly, the Court will grant the motion to dismiss Count I for failing to state a cause of action for national origin discrimination/hostile work environment.

In Count II, Plaintiff attempts to state a claim against the City pursuant to the Florida Civil Rights Act of 1992 ("FCRA").  The count incorporates the same allegations as made in Count I and is based on his national origin.  *See* Compl. ¶¶ 42-43.  Count II is dismissed for the same reasons Count I is dismissed.

Count III is labeled "Invasion of Privacy, Disclosure [sic] of Protected Information pursuant to HIPPA,[6] Negligent Supervision, Negligent Infliction of Emotional Distress."  There are at least two deficiencies with this count.

First, it co-mingles multiple claims into one count which is in violation of the pleading requirements of Federal Rules of Civil Procedure 8 and 10.  Rule 8 requires, among other things, that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as a "demand for the

---

[6]  In his response, Plaintiff acknowledges that HIPPA does not provide for a private cause of action, and that "more specific factual allegations should be provided with respect to the physical manifestations arising from the actions complained of."

relief sought." Fed. R. Civ. P. 8(a).  Although no technical form is required, "[e]ach

allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  The primary

purpose of Rule 8's pleading requirements is to provide a defendant with adequate

notice which will enable the adverse party to answer and prepare for trial.  Rule 10

requires that a "party state its claims or defenses in numbered paragraphs, each

limited as far as practicable to a single set of circumstances" and further that "each

claim founded on a separate transaction or occurrence ... be stated in a separate

count." Fed. R. Civ. P. 10(b);  *Benjamin v. Holy Cross Hosp.*, 11-62142-CIV, 2012 WL

1900026, *2 (S.D. Fla. May 24, 2012); *Davis v. Coca-Cola Bottling Co. Consol.*, 516

F.3d 955, 984 (11th Cir. 2008); *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*,

77 F.3d 364, 366 (11th Cir. 1996); *Desrouleaux v. Quest Diagnostics, Inc.*,

09-61672-CIV, 2009 WL 5214964 (S.D. Fla. Dec. 29, 2009) (dismissing complaint with

multiple claims in one count, finding that the complaint violated the "one-claim-

per-count rule").

     The second deficiency is that the count does not assert the elements of the

various causes of action or allege sufficient facts to state valid claims.  While

acknowledging some of his failings, Plaintiff asserts that the "remaining two

elements[7] are unknown since there are no facts at this time until discovery has been

---

     [7]  Presumably Plaintiff is referring to the requirements that he allege that the
violation was severe or pervasive enough to alter the terms and conditions of
employment and create a hostile or abusive working environment; and that the
employer is responsible for that environment under a theory of either vicarious or

completed to determine how the posting of the picture impacted the Plaintiff's employment or whether the employer knew or should have known and failed to take prompt remdial [sic] action." DE 29 at 5.

This is an inadequate response. Plaintiff is bringing this case for alleged harm, and he should be aware of how the challenged conduct impacted him. Plaintiff has failed to include sufficient facts to support the numerous conclusory allegations made throughout this count. Plaintiff improperly attempts to fill in the missing details by way of his response to the motion to dismiss. This is procedurally improper and any explanation or elaboration contained in his response to the motion may not be considered at this time. Counsel should know that the Court must limit its consideration to the four corners of the Complaint. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002) (recognizing that a court's review on a motion to dismiss is limited to the four corners of the complaint).

Plaintiff will be given <u>one</u> more opportunity to amend his complaint. However, the Second Amended Complaint must: (1) comply with the one-claim-per-count rule, (2) state the elements of the cause of action and (3) set forth sufficient facts to support the necessary elements.

The next count against the City is Count V. It is labeled: "Negligent Supervision, Failure to Have and Maintain an Information Technology Security Plan,

---

direct liability.

Negligent Inflication of Emotional Distress."  Count V duplicates the causes of action asserted in Count III, insofar as it includes claims for negligent supervision and negligent infliction of emotional distress.  Furthermore, like Count III, Count V mixes multiple claims without asserting the elements of the various causes of action or alleging sufficient facts to state valid claims.  Count V is dismissed with leave to provide a more definite statement as instructed above, and to plead each claim separately.

In Count VI, Plaintiff attempts to state a claim against the City under Title VII for retaliation.  Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin."  Pub. L. 88–352, § 704, 78 Stat. 257, as amended, 42 U.S.C. § 2000e–2(a).  A separate section of the Act — its anti-retaliation provision — prohibits an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e–3(a); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006).  The term "discriminate against" refers to distinctions or differences in treatment that injure protected individuals.  *Id*.

The anti-retaliation provision seeks to secure a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status by preventing an employer from interfering (through retaliation)

with an employee's efforts to secure or advance enforcement of the Act's basic guarantees.  In *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), the Supreme Court established the requirement that retaliatory violations involve "tangible employment action" such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Id*. at 761.  Here, however, Plaintiff merely alleges that he was laterally transferred to a more strenuous position (there are no allegations that the transfer impacted Plaintiff's pay or any other benefit).  An allegation of a lateral transfer to a "more strenuous position" does not allege "reassignment with significantly different responsibilities" or a significant change in benefits.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006). Thus, Count VI cannot survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief could be granted.

Defendant also seeks to strike multiple claims for punitive damages.  Since it is unclear on what claims Plaintiff will be able to state viable causes of action, and it is unclear what the factual basis for those claims will ultimately be, a decision on the question of punitive damages is premature.

In accordance with the discussion above, it is hereby

**ORDERED AND ADJUDGED** that Defendant, City of North Lauderdale's Motion to Dismiss Plaintiff's Amended Complaint; Alternatively, Motion for More Definite Statement and Motion to Strike [DE 11] is GRANTED.  Federal Rule of Civil Procedure

15(a) provides that leave to amend "shall be freely granted when justice so requires."  To the extent Plaintiff can plead in good faith and subject to the requirements of Rule 11, leave to file a Second Amended Complaint that conforms with the dictates reiterated above on or before April 10, 2013, is granted.  If Plaintiff fails to file a Second Amended Complaint by this date, the Court will assume Plaintiff has abandoned his cause and this case will be dismissed without further notice to the parties.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 25th day of March, 2013.

KENNETH A. MARRA
United States District Judge